IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

OCT 1 2 2010

PER _____

DEPUTY CLERK

)
)
UNITED STATES OF AMERICA and )
THE COMMONWEALTH OF )
PENNSYLVANIA, DEPARTMENT )
OF ENVIRONMENTAL PROTECTION, )
)
      Plaintiffs, )
)     C.A. No. 10- 2113
      v. )     Filed:
)     Judge :
RUTGERS ORGANICS CORPORATION )
)
      Defendant. )
)

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the Administrator of the United

States Environmental Protection Agency ("EPA"), and the Commonwealth of Pennsylvania,

Department of Environmental Protection ("PADEP"), (collectively "Plaintiffs"), file this

Complaint and allege as follows:

## PRELIMINARY STATEMENT

1.     This is a civil action against Rutgers Organics Corporation ("Rutgers") for injunctive

relief and recovery of costs pursuant to Sections 104, 106, and 107 of the Comprehensive

Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42

U.S.C. §§ 9604, 9606, and 9607 and the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"),

35 P.S. §§ 6020.101 – 6020.1305.  The Plaintiffs seek (1) injunctive relief requiring Rutgers to

perform response actions to remedy conditions in connection with the release or threatened

release of hazardous substances into the environment at the Centre County Kepone Superfund

Site (the "Site") located in College Township, Centre County, Pennsylvania; (2) recovery of

response costs incurred or to be incurred by the Plaintiffs for response actions performed at and ·in connection with the release or threatened release of hazardous substances into the environment at or from the Site; and (3) a declaratory judgment that Rutgers is liable for any future response costs that the Plaintiffs may incur as a result of a release or threatened release of hazardous substances from the Site.

2.     The claim for relief in this action involves operable unit 2 ("OU-2") of the Site.  The United States' claims regarding operable unit 1 ("OU-1") were addressed in a consent decree lodged with this Court in Civil Action No. 4: CV-96-2128 on December 6, 1996.  That consent decree was entered on April 16, 1997 ("1997 Consent Decree").

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1345 and 1367 and 42 U.S.C. §§ 9604, 9606, 9607(a), and 9613(b).

4.     Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 9613(b) because the claims arose, and threatened and actual releases of hazardous substances occurred, in this district.

## PARTIES

5.     Plaintiffs are the United States of America, acting at the request and on behalf of the Administrator of EPA and PADEP, the executive agency of the Commonwealth of Pennsylvania with the authority and duty to administer and enforce CERCLA and HSCA.

6.     Defendant Rutgers Organics Company ("Rutgers") is a corporation organized under the laws of Pennsylvania.  At all relevant times, Rutgers or its predecessors, owned and operated the Site.

## GENERAL ALLEGATIONS

7.     The Centre County Kepone Site consists of a 32-acre property near State College, Pennsylvania and is currently owned by Rutgers.  Rutgers, or its predecessors, conducted chemical manufacturing at the Site from approximately 1958-2004.

- 2 -

8.    From 1958 to 2004, Rutgers and its predecessor Nease Chemical Company manufactured at the Site a variety of chemicals used in the pharmaceutical, pesticide, metal plating and plastics industries.

9.    From 1958 to 1972, Rutgers disposed of untreated chemical wastes produced in its operations in earthen lagoons.    Rutgers permitted the chemical wastes to seep into the surrounding soil and groundwater.

10.    When Pennsylvania environmental officials discovered that a nearby spring was contaminated by organic chemicals from these wastes, Rutgers agreed to line the lagoons with concrete and asphalt, and to add lime to wastes in those lagoons.    Because the liners prevented the waste from dispersing into the soil and groundwater, the lagoons periodically became full and had to be emptied.    Rutgers emptied them by spraying the liquid waste onto a large grassy area that came to be known as the "spray field."    By 1972, PADEP officials discovered that this practice was contaminating the soil and groundwater at the spray field and ordered it stopped. Since then, Rutgers has disposed of its chemical waste off-site.

11.    The Site has been on the National Priorities List since September 8, 1983.

12.    EPA entered into an administrative order on consent with Rutgers in 1988 to perform a Remedial Investigation/Feasibility Study.    Rutgers completed that study in 1992.    It showed that groundwater surface water, soils and sediments had been contaminated with various hazardous substances including benzene, 1,2-dichloroethene, ethylbenzene, tetrachloroethane, vinyl chloride, xylene, kepone and mirex.

13.    Fish in the nearby Spring Creek had absorbed some of these chemicals into their tissues.

14.    The Site is comprised of two operable units ("OU-1 and OU-2").    OU-1 included remedial measures to address contaminated ground water, surface water, soils, and sediments on the Site, and required additional soil/sediment sampling of the 15-acre former spray field area and riparian areas of nearby Spring Creek.    As a result of the sampling conducted in OU-1, OU-2 includes remedial measures to address contaminated soils and sediments from the spray field.

15.    Rutgers has cooperated with EPA and PADEP in performing response activities at the Site.

- 3 -

16.    On April 21, 1995, EPA signed a final Record of Decision for OU-1. Rutgers negotiated the 1997 Consent Decree with EPA to perform the remedial action required in the Record of Decision for OU-1.

17.    Rutgers is currently completing the remedial work under OU-1 at the Site which addressed groundwater contamination and the most heavily contaminated soils and sediments in the areas around the manufacturing facility.

18.    On May 8, 2008, the District Court entered a modification agreement to the 1997 Consent Decree.    Through this modification, Rutgers reimbursed EPA for $628,164.79 in past oversight costs and agreed to reimburse EPA for future oversight costs.

19.    The ROD for OU-2 was issued on July 24, 2009.  This OU-2 describes the final remedial action to be taken at the Site.  EPA estimates that the cost of the OU-2 remedy will be $803,000.

### FIRST CLAIM FOR RELIEF
(Section 106 of CERCLA, 42 U.S.C. § 9606)

20.    The allegations of Paragraphs 1-19 are realleged and incorporated herein by reference.

21.    Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance form a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.

22.    By Executive Order 12850 dated January 23, 1987, the President's functions under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), have been delegated to the Administrator of EPA.

23.    The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

- 4 -

24.    Substances found in the soils and groundwater at the Site, such as those substances identified in Paragraph 12 above, are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

25.    The "hazardous substances" found at the Site were "released" or threatened to be "released" into the "environment" within the meaning of Sections 101(14), 101(22) and 101(8) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(22), and 9601(8), respectively, and these hazardous substances were disposed of at the Site within the meaning of Section 101(29) of CERCLA, 42 U.S.C. § 9601(29).

26.    Rutgers is a person who owned and operated the Site within the meaning of Section 101(21) of CERCLA 42 U.S.C. § 9601(21).

27.    EPA determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of release or threatened releases of hazardous substances from the Site.

28.    EPA issued its preferred remedy for the Site in the ROD, as described in Paragraphs 14, 17 and 19.

29.    The Defendant is liable for the injunctive relief to which the Plaintiffs are entitled at the Site under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), including, but not limited to, such relief as may be necessary to abate the imminent and substantial endangerment to the public health or welfare or the environment caused by the release or threatened release of hazardous substances from the Site.

## SECOND CLAIM FOR RELIEF
(Liability under Section 107(a))

30.    The allegations set forth in paragraphs 1 through 19, inclusive, are realleged and incorporated herein by this reference.

31.    Section 104(a) and (b) of CERCLA, 42 U.S.C. § 9604(a) and (b), authorizes the President, whenever there is a release or substantial threat of release of any hazardous substance into the environment, to remove or arrange for the removal of, and provide for remedial action relating to, such hazardous substance, or to take any other response measure consistent with the

National Contingency Plan ("NCP"), 40 C.F.R. Part 300, which the President deems necessary to protect the public health or welfare or the environment.    CERCLA further authorizes the President to expend monies to undertake planning, legal, economic, engineering, and other studies or investigations to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of CERCLA.  The President has delegated this authority to EPA pursuant to Executive Order 12580.

32.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part, as follows:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section --
>
> . . . .
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> . . . .
>
> shall be liable for --
>
> (A)  all costs of removal or remedial action incurred by the United States Government or a State . . .  not inconsistent with the national contingency plan;
>
> . . . .
>
> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D).

33.    As a result of releases and/or threatened releases of hazardous substances at the Site, the United States has incurred costs in excess of $136,331.98, and PADEP has incurred costs in excess of $82,000, which each seeks to recover through this action.   The Plaintiffs have expended and will continue to expend funds for planning, legal, and other activities necessary or appropriate to plan and direct response actions, to recover the costs of response actions, and for enforcement purposes, which it also seeks to recover through this action.  These response costs were incurred by the Plaintiffs in a manner not inconsistent with the NCP, 40 C.F.R. Part 300.

- 6 -

34.    Rutgers is liable to the Plaintiffs under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all costs recoverable under CERCLA, including investigation and enforcement costs, incurred and to be incurred by the Plaintiffs in connection with the Site.

THIRD CLAIM FOR RELIEF
(Hazardous Site Cleanup Act, 35 P.S. §§ 6020, *et seq.*)

35.    Paragraphs 1-19 and 33 are realleged and incorporated herein by reference.

36.    Section 701(a)(1) of the HSCA, 35 P.S. § 6020.701(a)(1), provides, in part:

> a person shall be responsible for a release or threatened release of a hazardous substance from a site when . . . [t]he person owns or operates the site . . . during the time of the release or threatened release.

37.    Section 702(a) of the HSCA, 35 P.S. § 6020.702(a), provides, in part:

> Any person allowing such a release [of a hazardous substance] . . . shall be liable for the response costs caused by the release or the violation.

38.    The Defendant is a "person" as defined by Section 103 of HSCA, 35 P.S. § 6020.103.

39.    The Site is a "site" within the meaning of Section 103 of HSCA, 35 P.S. § 6020.103.

40.    There has been a "release" or a threatened "release" of "hazardous substances" from the Site, as these terms are defined in Section 103 of HSCA, 35 P.S. § 6020.103.

41.    Section 507(a) of HSCA, 35 P.S. § 6020.507(a), provides, in part:

> A responsible person under section 701 . . . shall be liable for the response costs .... The department . . . which undertakes . . . a response action may recover those response costs ... in an action in equity brought before a court of competent jurisdiction.

42. The Defendant is a person who owned or operated the Site when the hazardous substances found at the Site and giving rise to response actions conducted at the Site were released on the Site.

43. Pursuant to Section 701(a) HSCA, 35 P.S. § 6020.701(a), Defendant is a person responsible for the release or threatened release of such hazardous substances from the Site during the time of the release or threatened release.

44. Pursuant to Section 507 of HSCA, 35 P.S. § 6020.507, PADEP is entitled to recover from Defendant any response costs incurred by PADEP with respect to the release and threatened release of hazardous substances at or from the Site.

45. The Defendant is liable to PADEP for payment of all response costs incurred or to be incurred by PADEP at the Site pursuant to Sections 701 and 702 of HSCA, 35 P.S. §§ 6020.701-6020.702.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs the United States and PADEP prays that this Court:

1. Order the Defendant to perform the injunctive relief necessary to remedy conditions in connection with the release or threatened release of hazardous substances at the Centre County Kepone Superfund Site, including the remedial action selected by EPA in the July 24, 2009 ROD;

2. Order the Defendant to reimburse Plaintiffs for all response costs incurred and to be incurred in connection with the Site, including interest thereon;

3. Enter a declaratory judgment that the Defendant is liable for all future response costs to be incurred by the United States for response actions in connection with the Site;

4.    Award Plaintiffs their costs in this action; and

5.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

Date: 10/8/10

W. BENJAMIN FISHEROW
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Date: 10-8-10

CARA M. MROCZEK
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611
Tel.:  (202) 514-1447
Fax:  (202) 616-6583
Email: cara.mroczek@usdoj.gov

PETER J. SMITH
United States Attorney
Eastern District of Pennsylvania

Date: 10-8-10

JUSTIN BLEWITT
Assistant United States Attorney
William J. Nealon Federal Building and Courthouse
235 N. Washington Ave., Suite 311
Scranton, PA 18503

OF COUNSEL:

- 9 -

PATRICIA C. MILLER
Senior Assistant Regional Counsel
Office of Regional Counsel, 3RC42
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19104-2029

**FOR THE COMMONWEALTH OF
PENNSYLVANIA, PENNSYLVANIA DEPARTMENT
OF ENVIRONMENTAL PROTECTION**

Date: _____          s/ Michael D. Buchwach_____
                                 MICHAEL D. BUCHWACH
                                 Assistant Counsel
                                 Pennsylvania Department of Environmental Protection
                                 Office of Chief Counsel, Litigation Support Unit
                                 Rachel Carson State Office Building, 9th Floor
                                 P.O. Box 8464
                                 Harrisburg, PA  17105-8464

                                 Phone: 717.787.9372

                                 Pa. Attorney ID # 21526